Our last case is United States v. Venable, Mrs. Lorsch. So the government has given us late-breaking news that you are correct that the district court had the authority to reduce Mr. Venable's revocation term, but they say you lose anyway, so why don't you tell us about that. Good morning, Your Honor. Yes, it's always a good afternoon to receive a letter from the government agreeing that you're correct. Of course, that comes along with the argument that Mr. Venable did not make this error below the government's understanding and therefore the late assertion that this case should be subject to plain error review. Based on the government's concession, this court should reverse and remand. The government abandoned the opportunity to argue plain error review, and the case that it cited in its letter from this court, United States v. Ashford, is squarely on point. In that case, the court found that a 28-J letter days before oral argument raising plain error review was simply too late and was not in accordance with the Federal Rules of Appellate Procedure, and it should not be conceded or should not be considered at that time. And the case, the more recent case, the Sierra Club case cited by the government also in its letter, doesn't change this. That was a case about Chevron deference and the standard of whether Chevron deference applied, and the equitable arguments here would support not considering the plain error argument, although even if plain error applies in this case, Mr. Venable can easily surpass that hurdle. The government has essentially conceded the error and that it's plain and only argues that, well, it's not really a miscarriage of justice, but the government seems to continue to misunderstand that Mr. Venable's statutory maximum as well as his guideline range would have changed at his revocation hearing in light of the change in the statutory penalties by the Fair Sentencing Act. Acknowledging all that, the revocation sentence was 15 months, which is, I guess, nine months under the maximum amount of the Fair Sentencing Act changes. What's the prejudice or harm in light of that amount of the sentence? Well, Your Honor, I think the court should consider the Supreme Court's decision in Rosales-Morales and then this court's decision in United States v. Simmons from just earlier this year, 917F312. And first we start with Rosales-Morales, which says that a miscalculation of a sentencing guideline range is essentially presumptively a plain error problem. And then this court in Simmons extended that to revocation context. But importantly, I think to your question, Rosales-Morales looked at a situation where the sentence that defendant received was within what would have been the correct guideline range. So this is a similar circumstance where his sentence is still underneath the correct guideline range. But the same issues that the court looked at in Rosales-Morales about how it would undermine confidence in our proceedings, we can't know for sure what the district court considered. For example, the district court may have said the guideline range for Mr. Venable was 30 to 37 months. Because he got this really long state sentence, I'm just going to half that. Instead of 30 months, I'm going to give him 15. But presented with the argument that, in fact, his guideline range was 24 months, the district court may have halved that and said, we simply don't know. And because of the late argument made by the government in this case, we didn't have the opportunity to request the transcripts and try to figure out what the district court actually did consider. Do you concede that if we were to remand the case, that we would be remanding for a consideration under a modification of the sentence as opposed to a full resentencing? Your Honor, I think that under 3582B1B, which is where the district court has authority to change an already final sentence pursuant to a new statute, in this case the First Step Act, the court simply does what the First Step Act says. It imposes a new sentence consistent with the restraints in the First Step Act, which are limited. I don't think that the plenary resentencing issue even is close to being raised on the facts before this case. And so the government's 28-J letter about Pegwood is simply not pertinent to the court's reasoning here. All the court would do is say we're remanding for the court to impose a sentence consistent. Is that a case-by-case decision as to whether you do a full plenary resentencing? That's a determination that would apply regardless of the case, correct? I think that's correct, Your Honor. Certainly the procedure... I certainly acknowledge that the basis the district court has to change the final sentence comes from 3582B1B. I just don't think the court has to decide in this proceeding based on this record, which is only about eligibility, whether a full resentencing is required or all that we really need here... Don't you have to... I'm sorry to cut you off, but we're remanding it. If we're going to remand, isn't that something that the district court would need to know as to whether they're remanded to do a full resentencing or whether they're remanded to do a modification under B1B? Absolutely, Your Honor. I think the court should remand with the instruction to modify the sentence in accordance with the First Step Act. In the First Step Act, the government has suggested that this court should essentially import the case law from 3582C2, the drug reduction context and the court's instructions from the Dillon case, and all that line of argument should be imported into this case. I don't think that's correct because the 3582C2 drug reduction context is limited by the Sentencing Commission's policy statements, which just aren't present here. So I think the court should remand, say the authority comes from 3582C1B, and that this new sentence should be imposed, which is the language from the First Step Act in accordance with the First Step Act, which requires that language of imposition, the court to look at the 3553 sentencing factors, and that's all the court would need to do to instruct the district court how to proceed on these facts. And I would also note, I don't think the court has to reach this given the government's concession, but the government now has agreed with me part of the way. We now, the government wants to say, well, yes, the court can amend the revocation sentence, but the original sentence is different. But there's really, I'm happy to have Ms. Walkhorst try to explain the logic behind that, but once the government has agreed that the unitary sentencing theory, which is clear from the Supreme Court's decision in Johnson, this court's decision in Ketter, reaffirmed in Hayman, it's... The decision, or the point that's raised on brief, which is occasioned by the short order from the district court that it had no authority to alter the revocation sentence, when you look at the actual motion to reduce the sentence, I can see where there's an argument that the Bureau of Prisons could credit this over a certain time against any time proposed. But I don't see where the specific argument is made in your motion for the district court to alter the revocation sentence itself, which is the remedy, it seems, that you argue for on brief. I argue for both, Your Honor, and I would agree that the attorney who wrote the motion below did not spell out with as much specificity as I did in the appellate briefs the two different theories. But I think... So what's your best language looking at the appendix in your motion? Best language is from Joint Appendix, page 20, the very beginning of the motion, before the attorney spells out in the numbered paragraphs the background of the case, where Mr. Benamble, through his counsel, simply asked the court, quote, pursuant to Section 404B of the First Step Act, to reduce his sentence. But then the rest of the motion fills that out, and the sentence that it asked to be reduced is the original sentence. I agree, Your Honor, but that essentially just gets to the plain... So the government has some credibility for its plain error argument. I think that the court can find, certainly, that had the plain error argument been raised, if the court finds it's appropriately raised at this late hour, it's not a crazy argument for the government to raise. I agree, Your Honor, but I think we overcome the alone... What about paragraph 10 of the motion that does discuss the effect of resentencing on the revocation? The net effect, then, of resentencing Mr. Benamble to a new sentence of 63 months would be to shorten his revocation sentence to time served. So that does implicate... I would agree, Your Honor. That provides additional support that, at best, the motion was unclear and did suggest those remedies are possible. But who's supposed to do that? You talk about the Bureau of Prisons doing it, but I don't see where you ask the district court to do it. Well, I think that Mr. Benamble asked the district court to change the sentence, and whether the district court changed the original sentence, which would have the impact of the Bureau of Prisons potentially crediting him for over-served time, then that would apply to the revocation sentence, or whether the district court changed the revocation sentence. If the government now agrees the district court absolutely had the authority to do, Mr. Benamble was harmed by the district court's decision that simply said there was no authority here, and that the district court absolutely had authority. I continue to argue he had authority on both counts, but I think that even if the court finds that the grounds the government now agrees to was not properly raised below, the plain error test is satisfied here because both his statutory maximum for what he faced at that revocation sentence has changed. It went from 36 months to 24 months because his underlying class of felony changed and his guideline range changed. And I'm unaware of how a change in statutory maximum could not be the sort of fundamental error to a proceeding that would undermine the public's confidence in the proceeding and have an impact on Mr. Benamble. You can make that argument on the brief, but I don't see it in the motion. But be that as it may, I'm confused. And both parties have recited these facts. It says Mr. Benamble was sentenced to a total term of 110 months. And then it talks about him actually serving 116 months. So there's six months in there. I don't know where those came from. Do you? I don't, Your Honor. I know that Mr. Benamble's original sentence was reduced as a result of the original, one of the first amendments to the crack cocaine guideline range, so I know he served less than that. I don't exactly know when good time is factored in, the actual number of months. He lost all his good time. I don't see how he could get an extra six months. That sounds right, Your Honor. I'm not sure, but I'm happy to try to clarify that. All right. All right. If there's no further questions, thank you. Ms. Bockhorst. May it please the Court. Jennifer Bockhorst for the United States. And if I may, I'd like to begin by apologizing to the Court and to counsel for the errors in the government's brief and for the late change in the United States position. I know you all had other things to do. We appreciate that. But why don't you start by telling us, what's the authority for you to file the letter dated October 29? Because it's not designated as a 28-J letter. No, and I think it was my understanding is it would not be properly characterized as a 28-J letter because it was not actually citing to supplemental authority. We felt it was incumbent upon the United States. Our first thought was we needed to correct the legal errors in the brief to the extent in the various places where the brief argues that revocation is not part of the unitary sentence. That's just contrary to existing law, as pointed out by Ms. Lourish. And so we started with the intent to retract that. You can certainly do that. But what's your authority to raise a new argument 24 hours before for an argument that was never raised before? The only authority, Your Honor, is that standard of review, as this Court recognized in 2018, is a matter for the Court to determine. It is not waivable by parties. As the Ashford case, as Ms. Lourish pointed out, there certainly is precedent for this Court declining to apply it. But it was known to the defense it should be plain error review as well as it's obvious from the record for all the reasons stated. And so we thought it incumbent upon us to bring to the Court's attention that the government also erred in reciting the standard of review. Well, we've had cases like the Sierra Club where there's some dispute over which of two standards of review apply, abuse of discretion or de novo. And the Court said there, well, the parties just don't get to pick it. The Court has to be the one to choose. But those were before the Court. Here we've got something that just appears. Yes, sir. Never before. So what's our authority to consider that? That the law is that if a party waives an argument before the lower court that it is subject to plain error review. Subject to, potentially subject still to exceptions and if it's just fundamentally unfair. I mean, in a normal course, the Court could potentially order supplemental briefing to allow the parties full opportunity. That would not probably be the best outcome in this case. Mr. Venable is due to be released on December 23rd. So it does not leave much time for his sentence to be remedied if it does need to be remedied. But, I mean, it is a matter for the Court to determine if, I think, if it is properly subject to plain error review, notwithstanding the government's failure to argue that in its initial brief. Or if the government, or if you determine that plain error review can be waived by the failure of the party to raise it in its initial brief. Okay. What else do you want to tell us about? Well, I thought it would be helpful, perhaps, if I could just summarize what our position is at this point. As the letter states, the United States agrees that the First Step Act authorized reductions in revocation terms because it is part of the unitary sentence. We continue to adhere to the position that it does not authorize reductions in already completed sentences or portions of sentences. The statute is silent as to that point, but we think it's clearly implied. In most instances, an already served sentence, it would be moot to reduce it. And for a number of policy reasons, we think the Court was correct in determining it did not have the authority to reduce the already served term of imprisonment for the purpose of creating bank time to offset a sentence. A term of imprisonment imposed for subsequent conduct. I will alert the Court that we argued yesterday before a different panel the case of the United States v. Jackson, which raises squarely the issue of whether the District Court abused its discretion in refusing to grant bank time. We submit that as a matter of policy and as a matter of law, it should be prohibited. But that's not before us here. This is just a question of the District Court error in saying it had no authority to consider it at all. Well, we would submit that the Court does not have the authority to consider the motion as written to the District Court. That the motion clearly asks for a reduction in a term of imprisonment that has been completed in order to create a pool of time that the Bureau of Prisons would then credit to the defendant to offset a future sentence. It did not ask the Court to reduce the sentence on the revocation term. So the District Court, we would submit that the District Court was correct in its ruling on the motion before it, which then takes you to the question of whether the Court will impose plain error review. If the Court declines to impose plain error review, then the United States has conceded that a revocation term can be reduced under the First Step Act, and the Court should at that point then remand. So if it went back and Mr. Venable did not amend his motion, then you could make that argument to the District Court? Yes, sir. But if he does amend his motion, assuming that amendment would be required, then what they've argued here would already be settled in terms of the District Court's authority. I mean, they can do whatever they want when it goes back. Yes, sir. If it goes back. Yes. And then the arguments could be made to the District Court on the reasons why it should not grant a reduction. Do you, it looks like in this case it's not disputed at least whether a plenary re-sentencing is appropriate or whether a modification under B.1.2, I think, if I have those subsections wrong, is appropriate. Is that something that varies on the case-by-case, whether it's a re-sentence or a modification? Isn't that a, that rule needs to be set or it would be the same regardless of the case? Yes, sir. And, of course, the District Court can look at the factors that are case-specific in exercising its discretion. Is that, do you agree with that? Yes. Yes. We have consistently argued as an incumbent on the court in every one of these cases in the first instance until it is settled by this court to determine what, how to proceed. Are you aware of any authority from appellate courts other than the Fifth Circuit case on that issue? There are two unpublished cases from the Eleventh Circuit. I do not have those cites with me. They are confusing, though. One applies 3582C2 law, which we would submit is not correct. The other adopts a General Dillon standard, much like Hegwood. And I can provide those citations. That's a slightly different question as to how you consider a modification motion. But it sounds like in both those unpublished decisions, there's no suggestion that there's a full resentencing. That is correct. That's correct. And we would encourage the court to reach that question to provide the District Court with the framework in which it should consider the motion if it determines a remand is appropriate. Anything else you want to tell us about? Well, if I could just expand briefly on our argument that if the court applies plain error review, why this error does not seriously affect the fairness and integrity of public reputations of the proceedings. Both the Fair Sentencing Act and the First Step Act are focused on remedying the inequities created by the disparity between crack cocaine and cocaine, the amount set forth in this 841B. The revocation term of imprisonment is imposed for breach of trust, and that is a separate question from just the underlying offense. And when you combine the different purposes of the revocation term with the very discretionary nature of the First Step Act, it leads to the conclusion that not reducing the revocation term is the correct outcome, is fully justified. The defense's arguments rest primarily on this idea that the statutory penalties have been reduced and the guidelines have been reduced, but that is not how the First Step Act operates. It allows the court to consider whether to grant a reduction as if those are in place. It doesn't actually replace the statutory penalties or the guideline range. And so it is not accurate to argue that there is a serious unfairness because his penalties have been reduced, because it is not a full... The First Step Act could have been passed to make the fair sentencing retroactive to all defendants and reduce those penalties, and that is not what it says. It leaves it to the discretion of the district court whether to apply it. And we think that is a very critical difference and is why it should not survive plain-air review if the court imposes that. And I believe that's all my arguments. If you have no further questions. Okay. Thank you very much. Ms. Loris, you've got some time if you wish to use it. Thank you, Your Honor. So I want to respond to a few things in the discussion that Your Honors are having with Ms. Bockhorst. So what I understand Ms. Bockhorst to be arguing is that this court was wrong in the Ashford case, that the court was simply incorrect to find that the government could essentially waive plain-air as a standard of review for this court to consider, or that the court got it wrong to say that in its discretion they could find that the argument was just raised too late. But that is a binding decision on this court, and I don't see any authority that changes that. So the government's argument now, based on a different case and a different context about Chevron deference, I think doesn't undo what the Ashford court has held. And I want to respond also, Judge Qualbom, to your question and be clear that I agree that the First Step Act has to be the same in how a district court treats the decision whether or not to impose a reduced sentence. It has to be the same whether it's in this circumstance or any other circumstance. But simply said, this case doesn't really... The defining features of a plenary resentencing, as I understand them, are the fact that a court could impose a higher sentence than the sentence originally imposed for a defendant. You have to have all the procedural requirements of the original sentencing, so the defendant has to be there in person and can allocute. And the slate's wiped entirely clean. None of the prior law of the case decisions from the original sentencing apply. Everything's up for grabs again. And Mr. Venable simply hasn't argued in this case that any of those features of a plenary resentencing are relevant here. He only argues that the government's sort of reliance, heavy reliance in this case and in every other First Step Act case in the district courts right now, that Dillon is relevant in trying to cabin the authority that's in the First Step Act as narrowly as possible to suggest that these are minor modifications and that the court's bound by sort of the Dillon constructs of just kind of operating within the amended guideline ranges and can't change anything else. That's just not presented here. All that's really presented is a need for the court to reverse and remand and tell the district court to find that Mr. Venable is eligible for relief, is authorized by the First Step Act, the district court's authorized to consider him, and then to look at what the First Step Act says. And the only limits in the First Step Act are that the court has to sentence him, if he chooses to reduce the sentence, as if the penalties from the Fair Sentencing Act are in place. So he can't go beneath mandatory minimums. That's a requirement in the Fair Sentencing Act, in the First Step Act. And you can't consider a second motion. If someone's already made one, had one bite at the apple, someone's already been sentenced in 2012 under the current laws, they can't make a motion. But that's all the First Step Act says. So the government's efforts to try to get the court to cabin and restrict a district court's authority through this case really, I think, would be inappropriate. So I do think the court should reverse and remand back to the district court. And if there's no other questions, we'll say good afternoon. All right, thank you very much. We'll ask the clerk to adjourn court for the day, and we'll come back for council. Dishonorable court stands adjourned until tomorrow morning. God save the United States and dishonorable court.
judges: G. Steven Agee, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.